<div style="border:1px solid black; padding:10px;">

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

</div>

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1410-18T4

STATE OF NEW JERSEY,

      Plaintiff-Respondent,

v.

TYQUAN GIBBS,

      Defendant-Appellant.

_____

      Submitted March 18, 2020 – Decided April 6, 2020

      Before Judges Fuentes, Haas and Enright.

      On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 18-02-0090.

      Joseph E. Krakora, Public Defender, attorney for appellant (Laura B. Lasota, Assistant Deputy Public Defender, of counsel and on the brief).

      Esther Suarez, Hudson County Prosecutor, attorney for respondent (Rookmin Cecilia Beepat, Assistant Prosecutor, on the brief).

      Appellant filed a pro se supplemental brief.

PER CURIAM

After the trial court denied his motion to suppress evidence in connection with Hudson County Indictment No. 18-02-00090, defendant Tyquan Gibbs pled guilty to second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b)(1). In accordance with the negotiated plea, the judge sentenced defendant to five years in prison, subject to a forty-two month period of parole ineligibility. We affirm.

Officer Sean Morelli of the Jersey City Police Department was the only witness to testify at the suppression hearing. On November 25, 2017, Officer Morelli and his partner, Officer Aguilar, were patrolling in a marked police car. At approximately 3:00 p.m., a staff sergeant radioed them to advise that a private citizen had reported seeing a black male with a red hat in possession of a firearm at a specific intersection. The officers asked that the sergeant call the citizen back for further information, but the sergeant responded that the citizen was unavailable.

The officers drove to the intersection and saw a black male wearing a red hat standing near the corner. The officers immediately recognized the individual as defendant because defendant's mug shot was posted at the police station on a "Be On The Lookout" (BOLO) list that stated he was under investigation for

multiple shootings in Jersey City, and had been involved in past domestic violence incidents.

As the officers got out of their car to investigate, defendant immediately put his hands in his waistband and the officers could no longer see them. The officers both ordered defendant to take his hands out of his pants, but he refused to comply. Officer Morelli testified that when defendant reached for his waistband, he was concerned for his safety because from his training and experience, he "believed [defendant] had a firearm that he was adjusting in his waistband." The officers each grabbed one of defendant's arms. As they did so, Officer Aguilar saw a black and silver handgun sticking out of defendant's sweatshirt pocket.

The officers arrested defendant and seized the handgun. During a search incident to this arrest, the officers also found a packet of heroin in defendant's pocket.

The judge denied defendant's motion to suppress the handgun and heroin seized from him. The judge found that Officer Morelli's testimony was credible and, based on the citizen's report, defendant's action in placing his hands in his waistband, his refusal to show his hands, and the fact that defendant was on the BOLO list, the police had the reasonable suspicion necessary to conduct a lawful

investigatory stop. The judge further found that in the course of conducting that stop, Officer Aguilar observed the gun in plain view as it protruded from defendant's pocket, and that the police properly seized the heroin packet following a search incident to defendant's arrest. This appeal followed.

On appeal, defendant raises the following contention:

> POINT I
>
> THE INVESTIGATORY STOP OF DEFENDANT, BASED ON AN ANONYMOUS TIP THAT A BLACK MAN WEARING A RED HAT WAS IN POSSESSION OF A GUN AT MARTIN LUTHER KING, JR. DRIVE AND GRANT AVENUE IN JERSEY CITY, WAS NOT SUPPORTED BY REASONABLE SUSPICION AND WAS UNCONSTITUTIONAL. THUS, THE DISCOVERY OF THE HANDGUN AND DRUGS ON DEFENDANT'S PERSON INCIDENT TO THE ILLEGAL STOP MUST BE SUPPRESSED.

In addition, defendant raised the following arguments in his pro se supplemental brief:

> POINT I
>
> THE INSUFFICIENCY OF THE INFORMATION POSSESSED BY THE SOUTH DISTRICT POLICE DEPARTMENT POLICE OFFICERS WAS INSUFFICIENT TO SUPPORT A FORCIBLE TERRY[1] STOP, BECAUSE THE ARRESTING OFFICER DID NOT CONDUCT ANY CORROBORATIVE INVESTIGATION TO

---

[1] Terry v. Ohio, 392 U.S. 1 (1968).

4

BOLSTER THE TIP, THE KNOWLEDGE, ACQUIRED BY THE OFFICER AFTER STOPPING [DEFENDANT], THAT HE HAD A GUN SHOULD HAVE BEEN SUPPRESSED[.]

1. THE ANONYMOUS TIP LACKED ANY INDICIA OF RELIABILITY TO SUPPLY THE REQUISITE REASONABLE SUSPICION NECESSARY TO EFFECT A <u>TERRY</u> STOP[.]

2. THE ANONYMOUS TIP LACKED ANY PREDICTIVE INFORMATION THAT COULD HAVE BEEN CORROBORATED[.]

3. THE ANONYMOUS TIP PROVIDED NO INFORMATION FROM WHICH THE POLICE COULD JUDGE THE RELIABILITY OR VERACITY OF THE TIP[.]

4. THE OFFICERS LACKED ANY OTHER GROUNDS TO STOP [DEFENDANT.]

POINT II
WAS [DEFENDANT] SEIZED (THUS, SUBJECTED TO A SEIZURE BY THE POLICE OFFICERS) AND IF SO WAS THE SEIZURE REASONABLE WITHIN THE TRUE MEANING OF THE FOURTH AMENDMENT[?]

POINT III
ASSUMING [DEFENDANT] WAS SEIZED, WAS THE SEIZURE OF HIM REASONABLE[?]

1. The BOLO (BE ON THE LOOKOUT).

2. The Dispatch.

3. The Residential Area and The Time

A-1410-18T4

4. The Anonymous Telephonic Tip.

5. Summary.[2]

We reject these contentions and affirm.

Our review of a trial judge's decision on a motion to suppress is limited. State v. Robinson, 200 N.J. 1, 15 (2009). In reviewing a motion to suppress evidence, we must uphold the judge's factual findings, "so long as those findings are supported by sufficient credible evidence in the record." State v. Rockford, 213 N.J. 424, 440 (2013) (quoting Robinson, 200 N.J. at 15). Additionally, we defer to a trial judge's findings that are "substantially influenced by [the trial judge's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." Ibid. (alteration in original) (quoting Robinson, 200 N.J. at 15). We do not, however, defer to a trial judge's legal conclusions, which we review de novo. Ibid.

The police may, without a warrant, temporarily detain a person if they have a reasonable and articulable suspicion that the person is engaged in unlawful activity and may be armed. Terry, 392 U.S. at 30-31; State v. Elders,

---

2 The arguments raised in defendant's supplemental brief largely parrot the contentions presented by his appellate counsel. We have considered defendant's pro se arguments, and conclude they are clearly without merit and do not warrant further discussion. R. 2:11-3(e)(2).

192 N.J. 224, 247 (2007). "A suspicion of criminal activity will be found to be reasonable only if it is based on 'some objective manifestation that the person [detained] is, or is about to be engaged in criminal activity.'" State v. Williams, 410 N.J. Super. 549, 555 (App. Div. 2009) (alteration in original) (quoting State v. Pineiro, 181 N.J. 13, 22 (2004)). "In making this determination, a court must consider '[t]he totality of the circumstances.'" Ibid. (alteration in original) (quoting Pineiro, 181 N.J. at 22).

Applying these principles here, we discern no basis for disturbing the judge's determination that the police properly seized the handgun and heroin from defendant after conducting an investigatory stop of defendant. Our Supreme Court has noted that an ordinary citizen reporting a crime to the police is not viewed with suspicion, and courts assume that a further demonstration of reliability is not necessary to justify a stop of the person identified in the citizen's report. State v. Basil, 202 N.J. 570, 586 (2010) (citing State v. Amelio, 197 N.J. 207, 212 (2008)). "Thus, an objectively reasonable police officer may assume that an ordinary citizen reporting a crime, which the citizen purports to have observed, is providing reliable information." Ibid. (citing State v. Stovall, 170 N.J. 346, 362 (2002)). "There is an assumption grounded in common experience

A-1410-18T4

that such a person is motivated by factors that are consistent with law enforcement goals." State v. Davis, 104 N.J. 490, 506 (1986).

Here, the police received a report from a citizen that a black man wearing a red hat and standing at a specific intersection was in possession of a gun. When the police arrived, defendant was the only person in the area and he matched the citizen's description. The officers recognized defendant because he was on the BOLO list. When defendant saw the police exit their patrol car, he immediately placed his hands in his waistband, which alarmed the officers based on their training and experience that movements of this nature often indicate that the suspect is attempting to conceal a weapon. When defendant refused to show his hands in response to the officers' reasonable requests, they grabbed his arms. As they did so, Officer Aguilar saw the handgun sticking out of defendant's pocket.

Under the totality of these circumstances, we are satisfied that the officers had the required reasonable and articulable suspicion that defendant was engaged in unlawful activity and was armed. Therefore, the investigatory stop that led to Officer Aguilar's plain view observation of the handgun in defendant's pocket was constitutionally permissible. Terry, 392 U.S. at 30-31. As our Supreme Court has stated, the plain view doctrine allows seizures without a

warrant so long as an officer is "lawfully . . . in the area where he observed and seized the incriminating item or contraband, and it [is] immediately apparent that the seized item is evidence of a crime." State v. Gonzales, 227 N.J. 77, 101 (2016). Under these circumstances the seizure of defendant's handgun was unimpeachable.

After defendant's arrest, the officers' search of defendant's person was authorized by the well-established Fourth Amendment exception permitting the warrantless search of persons incident to their lawful arrest. See Chimel v. California, 395 U.S. 752, 762-63 (1969); State v. Dangerfield, 171 N.J. 446, 461 (2002). Therefore, the judge also correctly denied defendant's motion to suppress the packet of heroin seized following his arrest.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1410-18T4